UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

B.J.G.,

     Plaintiff,

     v.

SOCIETY OF THE HOLY CHILD          Civil No. 07-541-HA
JESUS, WESTERN PROVINCE, INC.,
an active California nonprofit corporation;
and SOCIETY OF THE HOLY CHILD
JESUS, AMERICAN PROVINCE, an      OPINION AND ORDER
active domestic nonprofit Pennsylvania
corporation,

     Defendants.

_____

HAGGERTY, Chief Judge:

     This case is brought by a woman whose identity will be referred to as "plaintiff" or

"B.J.G." for purposes of this ruling.  In her First Amended Complaint plaintiff asserts claims

against defendants under a *respondeat superior* theory for sexual abuse allegedly suffered as a

child and intentional infliction of emotional distress.  Defendants advance a Motion to Strike

[42] and a Motion for Summary Judgment [23].  Oral argument on these motions was heard on

March 10, 2008.  For the following reasons, the motion to strike and the motion for summary

judgment are both granted.

**<u>BACKGROUND</u>**

Page 1    OPINION AND ORDER

Plaintiff attended primary school at Saint Rose School (now known as Archbishop Howard School), and her first year of secondary school at Holy Child Academy, before finishing high school at a public school. She alleges that she suffered two occasions of sexual abuse committed by two nuns serving as teachers who were associated with defendants. Both nuns are now deceased.

Plaintiff's first allegation describes an interaction with her third-grade teacher in 1957. Plaintiff asserts that she was assisting the nun in moving supplies to the school basement when the nun fondled plaintiff's breasts "in a deliberate, repetitive, and sexual manner." Pl. Decl. at Para. 5.

Plaintiff's second allegation describes an encounter with another nun during her freshman year of secondary school in 1963. Plaintiff asserts that this nun assaulted her sexually during a scheduled counseling appointment. Specifically, plaintiff alleges that the nun ended their counseling by hugging plaintiff tightly, kissing her on her cheek, kissing her forcibly on her mouth against her will, and forcing her tongue into plaintiff's mouth. Pl. Decl. at Para. 6.

Plaintiff explains that she kept these incidents to herself "until well into adulthood." Pl. Resp. at 4. She acknowledges participating in counseling in the mid-1990's with therapist Victor Harwood (Harwood), but contends that the primary purpose of that counseling was to address her abusive marriage. Harwood, however, has submitted an affidavit in which he asserts that he advised plaintiff that the nuns' abuse was a significant factor in her depression, that she acknowledged understanding this, and that they "worked through" the issue of the nuns' alleged abuse in counseling occurring in the mid-1990's.

In response to this affidavit from Harwood, plaintiff claims "no specific recollection of discussing" her childhood incidents involving the nuns with Harwood, and "emphatically denies" Harwood's statements that they discussed the incidents and worked through them during therapy. Pl. Decl. at 10-12.

Plaintiff explains that she did not comprehend how the incidents impacted her until 2005, when a friend asked why she did not attend church.  After confiding her childhood incidents to her friend, her friend suggested that plaintiff should pursue legal action.  Shortly afterwards, plaintiff filed her claim *pro se* in the Archdioceses of Portland bankruptcy litigation.  Pl. Decl. at 7.

Plaintiff also began counseling with Leasia Becker-Cleary in 2005.  Becker-Cleary diagnosed plaintiff as suffering from adjustment disorder with depressive features.  Becker-Cleary Decl. at 2.  Becker-Cleary also suspected that plaintiff may suffer from post-traumatic stress disorder.  *Id*.  Although plaintiff was unable to continue counseling due to financial reasons, Becker-Cleary opined that plaintiff has carried her depression throughout her life and that it has contributed to her delayed discovery of the connection between the alleged abuse inflicted upon her by the nuns and her depression.  *Id*.

## QUESTIONS PRESENTED

Defendants move to strike two portions of plaintiff's responsive pleadings:  plaintiff's amended and "corrected" answers to her deposition, which alter plaintiff's testimony regarding when she knew of the impact upon her from the nuns' alleged abuse, and Paragraphs 11 and 12 of plaintiff's Declaration in Response to Defendants' Summary Judgment Motion, which pertain

to the scope of plaintiff's therapy with Harwood – specifically, whether she discussed the nun abuse with him, which, in prior sworn testimony, plaintiff said she could not remember.

Defendants also seek summary judgment against plaintiff's claims, primarily on grounds that there is no genuine issue of material fact regarding the question that – even if plaintiff's abuse allegations are true – plaintiff knew or reasonably should have known that the alleged incidents had contributed to her depression more than three years before this action was filed. Because this ground is meritorious, the court need not address the possible merits of defendants' alternative arguments that plaintiff's reliance upon O.R.S. § 12.117 to revive plaintiff's claims against defendants might violate Due Process principles of law under the Fourteenth Amendment to the United States Constitution, or that Oregon recognized a charitable immunity doctrine during the period of time that plaintiff alleges she was abused.

**STANDARDS**

**1.    Motion to Strike**

Motions to strike are regarded with disfavor. *Montecino v. Spherion Corp.*, 427 F. Supp.2d 965, 966-67 (C.D. Cal. 2006) (citation omitted).   Matters should not be stricken from a pleading unless it is clear that those matters can have no possible bearing upon the subject matter of the litigation. *Id*. at 967 (citation omitted).  When considering a motion to strike, the court "must view the pleading in a light most favorable to the pleading party." *In re 2TheMart.com, Inc. Securities Litig.*, 114 F. Supp. 955, 965 (C.D. Cal. 2000).  Moreover, a court must deny a motion to strike if any doubt exists whether the allegations in the pleadings might be relevant in the action. *Id*.

Federal Rule of Civil Procedure 30(e) permits a deponent to make changes to a transcript for thirty days after being notified that the deposition transcript is available.  This rule recognizes the need for flexibility when typographical errors arising in a transcript need correction, or when inconsistencies resulting from an honest discrepancy or mistake occur.  *See Vail v. T-Mobile USA, Inc.*, 2007 WL 3232285 (D. Or., October 29, 2007).  The Ninth Circuit has rejected attempts to make changes that are "offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment."  *Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005) (citation omitted).

**2.      Motion for Summary Judgment**

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c); *see Bahn v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  Once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried.  *Id.*

The court must view the evidence in the light most favorable to the non-moving party.  *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted).  All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party.  *MetroPCS, Inc. v. City and Co. of San Francisco*, 400 F.3d 715, 720 (9th Cir.

Page 5     OPINION AND ORDER

2005) (citation omitted).  Where different ultimate inferences may be drawn, summary judgment is inappropriate.  *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c)).

Deference to the non-moving party has limits.  The non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient."  *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252 (1986).  Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

**3.**      **Discovery Rules**

Defendants' primary argument for summary judgment against plaintiff is that her claims are time-barred because she was aware – or a reasonable person should have been aware – that there was a causal connection between her alleged injury and the alleged abuse.

The Oregon Supreme Court has provided specific guidance as to how to calculate the application of a statute of limitations:

> [T]he statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that each of the three elements [of legally cognizable harm] (harm, causation, and tortious conduct) exists.
>
> We emphasize that this is an objective test.  In most cases, the inquiry will concern what a plaintiff should have known in the exercise of reasonable care.

* * *

> The discovery rule does not protect those who sleep on their rights,
> but only those who, in exercising the diligence expected of a
> reasonable person, are unaware that they have suffered legally
> cognizable harm.

*Gaston v. Parsons*, 864 P.2d 1319, 1324 (Or. 1994) (citation omitted).

The Oregon Supreme Court recently addressed general discovery accrual rules in ruling that questions of fact precluded a directed verdict. *See T.R. v. Boy Scouts of America*, 2008 WL 660648 (Or., March 13, 2008). The defendant municipality was sued by a plaintiff under 42 U.S.C. § 1983 for deliberate indifference regarding sexual abuse inflicted upon the plaintiff when he was a minor by a police officer who served in a program chartered by the Boy Scouts of America.

For purposes of properly construing the arguments presented in this case, this court notes that the Oregon Supreme Court recognized two principles of the discovery accrual rule: (1) that "the limitations period begins to run as to each defendant when the plaintiff discovers, or a reasonable person should have discovered, that defendant's causal role," and (2) that "when a duty to investigate exists, the statute of limitations only begins to run if the investigation would have disclosed the necessary facts." *Id*. at *5 (citations omitted). Addressing that duty more specifically, the Oregon Supreme Court held:

> the discovery accrual rule provides that a plaintiff's claim against a
> particular defendant accrues when (1) the plaintiff knows, or a
> reasonable person should know, that there is enough chance that
> the defendant had a role in causing the plaintiff's injury to require
> further investigation; and (2) an investigation would have revealed
> the defendant's role. Application of the discovery accrual rule is a
> factual issue for the jury unless the only conclusion a reasonable
> jury could reach is that the plaintiff knew or should have known
> the critical facts at a specified time and did not file suit within the
> requisite time thereafter.

Page 7    OPINION AND ORDER

*Id*. at *7 (citing *Brown v. J.C. Penney Co.*, 688 P.2d 811 (Or. 1984)).

Moreover, Oregon law has recognized special rules regarding the applicability of the

statute of limitations in child abuse cases:

> an action based on conduct that constitutes child abuse or conduct
> knowingly allowing, permitting or encouraging child abuse
> accruing while the person who is entitled to bring the action is
> under 18 years of age shall be commenced not more than six years
> after that person attains 18 years of age, or if the injured person has
> not discovered the injury or the causal connection between the
> injury and the child abuse, nor in the exercise of reasonable care
> should have discovered the injury or the causal connection
> between the injury and the child abuse, not more than three years
> from the date the injured person discovers or in the exercise of
> reasonable care should have discovered the injury or the causal
> connection between the child abuse and the injury, whichever
> period is longer.

O.R.S. § 12.117(1).

The Oregon Court of Appeals has addressed this law:

> This statute establishes a general rule that child abuse
> claims must be filed not more than six years after the plaintiff
> reaches 18 years of age.  It also establishes a different time limit
> for plaintiffs who qualify for a "delayed discovery" exception.
> Plaintiffs qualify for the extended filing period if they did not
> discover the injury while under 18; alternatively, they qualify if,
> while under 18, they discovered the injury but did not discover that
> it was caused by the child abuse.  In either case, the time limit
> applies only if the nondiscovery was reasonable.  If a plaintiff
> qualifies for the extended limitation period, she may file her action
> within three years of the time she discovered, or should have
> discovered, the injury or the connection between the injury and the
> abuse, whichever period is longer.

*Jasmin v. Ross*, 33 P.3d 725, 727 (Or. App. 2001).

The plaintiff in *Jasmin* had been sexually abused by her stepuncle from the time she was

ten years old until she was seventeen.  Members of her family attempted to intervene, and an

investigation was undertaken after the relationship was reported to school authorities and to law enforcement officers, but criminal charges were never pursued. However, the Court of Appeals concluded that plaintiff's lawsuit against the stepuncle, filed when she was thirty years old, qualified for the tolling exception described by O.R.S. 12.117 because she "refused to consider the relationship with her stepuncle as abusive or as the cause of her symptoms and that such a reaction is common among adult survivors of child abuse." *Id*. at 728. The plaintiff's mental health records provided no grounds for suggesting that the plaintiff connected her past abuse to her problems as an adult until 1996. *Id*. In 1998 the plaintiff was treated by a counselor who diagnosed the plaintiff with post-traumatic stress disorder, and testified that the plaintiff "had only recently begun to identify the sexual abuse in her past as the cause of her current mental health problems." *Id*. at 726. The plaintiff filed her complaint shortly thereafter, on July 16, 1998. *Id*.

## ANALYSIS

### 1.    Motion to Strike

Defendants' motion to strike plaintiff's proposed corrections to her deposition transcript and portions of plaintiff's declaration is well-taken. First, the corrections were untimely. Plaintiff's deposition occurred on August 20, 2007. The reporter's certificate indicates that a transcript of the deposition was delivered to plaintiff's counsel no later than August 29, 2007. *See* Aff. of William Dickas in Support of Motion to Strike, Ex. 1.

Accordingly, the thirty-day period for corrections expired on September 28, 2007. *See Hambleton Bros.*, 397 F.3d at 1224 (Rule 30(e) provides that "the thirty-day correction clock begins upon notification of availability, not possession"). Counsel for plaintiff acknowledged

that the proposed corrections were submitted to the court reporter on October 1, 2007. Further analysis of whether the proposed corrections were technically untimely is unnecessary, however, because the overriding suspicion that plaintiff's proposed changes were strategically timed cannot be avoided.

Plaintiff's proposed corrections were submitted two days after defendants filed their summary judgment motion. It is undisputed that a party's timing in seeking to correct a transcript is a significant factor that a court should consider in evaluating whether to allow the corrections. *Hambleton Bros.*, 397 F.3d at 1225 (noting a judge's concern that a non-moving party's proposed corrections benefitted from "tactical timing" and appeared to be "purposeful rewrites tailored to manufacture an issue of material fact" and to "avoid a summary judgment ruling. . . .") (footnote omitted).

This is precisely what appears to have occurred here. After examining the relevant documents in this matter, this court is compelled to agree with defendants that plaintiff "swore several different times during her deposition that she actually knew that what she says the Sisters did to her had contributed to her bouts of depression [long] before she finally filed her complaint." Reply to Resp. to Mot. Strike at 3-4; *see also* Dfts.' Reply in Support of Summary Judgment at 3-6. Plaintiff's belated attempts to alter her deposition testimony to assert instead that plaintiff does not know when she became cognizant that the alleged abuse at issue contributed to her depression are rejected. *Id*.

Counsel's purported excuse for needing to make these corrections is that plaintiff was "pressured for answers [that] she was unsure of" at her deposition, and that "when pushed," plaintiff was compelled to "guess." Pl.'s Resp. to Mot. Strike at 1. This allegation is

unsupported by an examination of the deposition transcript, and was recanted by counsel during

oral argument on defendants' motions. Similarly, counsel's accusation that defendants "pushed

the case to summary judgment" while plaintiff reviewed her transcript is specious. *Id*. at 2. To

the contrary, after plaintiff's deposition was taken, and after plaintiff's attorney obtained a

transcript of that deposition, defendants sought and were granted an unopposed *extension* for

filing dispositive motions. *See* Amended Mot. for Extensions [21], filed September 7, 2007.

Defendants filed their summary judgment motion more than thirty days after plaintiff's

deposition and on the last day allowed for filing dispositive motions. *See* Record of Order [22]

(extending the filing date for dispositive motions to September 28, 2007).

In *Hambleton Bros.*, the Ninth Circuit spoke plainly in holding that "Rule 30(e) is to be

used for corrective, and not contradictory, changes." *Hambleton Bros.*, 397 F.3d at 1226.

Because it cannot be reasonably disputed that plaintiff's counsel has sought to make unjustified

and contradictory changes to plaintiff's deposition transcript, defendants' motion to strike those

corrections is granted.

Defendants also challenge Paragraphs 11 and 12 of plaintiff's Declaration in Response to

Summary Judgment. This challenge is well-taken.

While providing an adversary proceeding deposition in a related bankruptcy case in

2006, plaintiff testified that she did not recall discussing any of her childhood abuse incidents

with Harwood. In August 2007, plaintiff was deposed for this civil action. In the deposition she

acknowledged that she discussed other childhood abuse incidents that were unrelated to nuns

with Harwood, but she could not remember discussing the alleged incidents involving the nuns

with him.

Page 11    OPINION AND ORDER

Twelve weeks later, after the summary judgment motion and Harwood's supporting affidavit were filed, plaintiff filed her declaration. The challenged portions of plaintiff's declaration assert that she has "very little recollection" of addressing the alleged abuse from nuns with her therapist Harwood, that any discussion of those incidents "would have been to me in passing and secondary" (Pl.'s Decl. at Para. 11) and that while she has no specific recollection, Harwood's sworn testimony in Paragraph 5 of his affidavit are erroneous because she is "quite certain" she "would not have said any such thing to [Harwood]." Pl.'s Decl. at Para. 12. These portions of plaintiff's declaration make no assertion of actual knowledge or memory possessed by plaintiff, but instead appear to speculate as to how plaintiff thinks she might have viewed the discussions her therapist has sworn remembering. The court notes that plaintiff offers no formal opposition to this aspect of defendants' motion in plaintiff's formal responsive briefing to the motion.

The only portion of the Harwood affidavit that plaintiff denies explicitly is Harwood's assertion that plaintiff "described in detail" the two allegations of abuse by the nuns. *See* Pl.'s Decl. at Para. 12 (denying Paragraph 5 of the Harwood Affidavit). However, Harwood also asserted specifically that during their counseling sessions in 1994 and 1995, he told plaintiff that the abuse she had suffered, including the alleged abuse by the nuns, "appeared to be the cause" of plaintiff's depression, that he helped her work through her history of abuse, and that plaintiff "understood the incidents she described, including those she described involving two nuns, if true, were, in part, the basis for her depression." Harwood Aff. at Para. 7-8. Plaintiff's only refutation of these sworn statements is that such discussions "would have been to me in passing and secondary" to her other reasons for attending therapy. Pl.'s Decl. at Para. 11.

Not only is defendants' motion to strike this portion of plaintiff's Declaration deemed meritorious (and alternatively construed as formally unopposed), but – for reasons addressed below – even if these portions were not stricken, the substance of the challenged portions would nevertheless fail to defeat the support for granting summary judgment to defendants.

**2.      Summary Judgment Motion**

Defendants' primary argument for summary judgment against plaintiff is that her claims are time-barred because she was aware – or a reasonable person should have been aware – that there was a causal connection between her alleged injury and the abuse that the nuns allegedly committed against her.  As addressed above, plaintiff's efforts to recant or obfuscate her prior deposition testimony regarding her awareness of the impact of the alleged conduct are rejected by this court.

In her original deposition testimony, plaintiff acknowledged seven times that she was aware more than three years before filing suit that the alleged childhood incidents involving the nuns contributed to her depression.  *See* Dfts.' Reply in Support of Summary Judgment at 3-6.

Issues similar to those presented here were recently addressed by this district's Bankruptcy Court.  A claimant against debtor Roman Catholic Archbishop of Portland, Oregon asserted that his discovery of a causal connection between his "anti-religion" attitude and abuse he allegedly suffered as a child from "Father B" of the Archdiocese occurred within three years of his suit.  The court noted, however, that the claimant had been advised by an attorney that he had grounds to sue Father B in the mid 1990's, and concluded that it would have been "prudent" for the claimant "to make an inquiry as to how the abuse has affected" him, and that someone "in claimant's situation exercising reasonable care would have discussed the matter with trusted

advisors, such as parents or a spouse." *In re Roman Catholic Archbishop of Portland in Oregon*, 2006 WL 2038642, at *4 (Bankr. D. Or., June 7, 2006). Therefore, because the "claimant did nothing to investigate whether he had been damaged after being advised of his potential claim" in the mid-1990's, his claim was time-barred. *Id.*

As addressed above, Harwood provided specific recollections of his treatment of plaintiff in the mid-1990's:

> During my counseling sessions in 1994 and 1995, I told [plaintiff] that the incidents of abuse, which she described, including those involving the two nuns, appeared to be the cause of [plaintiff's] occasions of depression. My counseling sessions required [plaintiff] to "work through" her history of alleged abuse and to understand how the abusive incidents she described, including those she described involving the two nuns, caused her depression and how to resolve the depression.

Harwood Aff at Para. 7.

Despite being advised explicitly by a professional that the alleged abuse by the nuns was a cause of her depression, and being guided by that professional to understand the causal links and to try to resolve her depression, plaintiff failed to seek legal redress for at least ten years.

Plaintiff's attempt to proffer a limited refutation of part of Harwood's affidavit is rejected, but would fail to preclude granting summary judgment to defendants even if Paragraphs 11 and 12 were not stricken. Plaintiff proffered in her Declaration that any counseling in 1994 and 1995 that linked her allegations about the nuns to her depression would have been "secondary" to her, and that she is "quite certain" she "would not have" provided descriptions of the nuns' alleged abuse of her to Harwood. Pl.'s Decl. at Para. 11-12. Even if this proffer were accepted as true, there is no genuine issue of material fact that disputes Harwood's other sworn statements. Specifically, Harwood told plaintiff that the abuse she had suffered, including the alleged abuse

Page 14    OPINION AND ORDER

by the nuns, "appeared to be the cause" of plaintiff's depression, that he helped her work through her history of abuse, and that plaintiff "understood the incidents she described, including those she described involving two nuns, if true, were, in part, the basis for her depression."  Harwood Aff. at Para. 7-8.  These undisputed statements establish that plaintiff knew – or reasonably should have known – about the causal connection between her alleged injury and the alleged child abuse committed by the nuns by 1995.

Similarly, even if plaintiff were permitted to contradict her original deposition answers as attempted in her proposed deposition corrections, the proffered "corrections" do not create an issue of fact.  Plaintiff merely attempts to recant her apparent awareness of any connection between her depression and the alleged abuse by nuns by claiming that she does not know when she became aware of the causal connection.

Even if her proffered corrections were allowed, plaintiff cannot stave off summary judgment merely by presenting conflicting versions of her recollections, or attempting to infuse the critical legal question at issue – and her prior, dispositive testimony regarding that question – with tactical ambiguity.  The Ninth Circuit does not allow a plaintiff to create a genuine issue of fact by submitting sworn statements that contradict prior testimony.  *See Radobenko v. Auto. Equip. Corp.*, 520 F.2d 540 (9th Cir. 1975).  In that case, the Ninth Circuit confronted a situation similar to this litigation:

> Examination of the entire record discloses many pages of
> sworn statements by appellant Radobenko submitted in opposition
> to the motion for summary judgment.  From the welter of
> conclusionary and argumentative recitals therein, we glean few
> probative facts.  If there is any issue of fact in the proofs, it exists
> only because of the inconsistent statements made by Radobenko
> the deponent and Radobenko the affiant.  Thus, we are presented
> with the question of whether contradictory testimony of a plaintiff

Page 15    OPINION AND ORDER

alone can be used by him to defeat a defendant's summary judgment motion where the only issue of fact results from the necessity of choosing between the plaintiff's two conflicting versions.

\* \* \*

The very object of summary judgment is to separate real and genuine issues from those that are formal or pretended, so that only the former may subject the moving party to the burden of trial. Here we are convinced that the issues of fact created by Radobenko are not issues which this Court could reasonably characterize as genuine; rather, they are sham issues which should not subject the defendants to the burden of a trial. Thus, we hold that the District Court properly found that there was no genuine issue as to any material fact.

*Id*. at 543-44 (citations omitted).

The record presented is replete with plaintiff's acknowledgments of her past awareness of a connection between the alleged incidents and her depression. Plaintiff's efforts to plausibly cast uncertainty surrounding her comprehension of that connection are improper, and even if allowed would be rendered moot by Harwood's undisputed sworn statement that he explicitly advised her of that connection in 1995.

Plaintiff's reliance upon the Oregon Court of Appeals' reasoning in *Jasmin* and upon the expert testimony of her more recent therapist, who believed that plaintiff may suffer from post traumatic stress disorder, is unpersuasive. The decision in *Jasmin* is distinguishable because in that case, there was strong evidence that suggested that the plaintiff failed to comprehend that the abuse she suffered was abnormal and a "cause of her current mental health problems" until just before the plaintiff filed her suit. *Jasmin*, 33 P.3d at 726. The facts presented in this case establish that plaintiff was told explicitly in 1995 that the alleged abuse for which she is suing was a cause of her injury.

Page 16    OPINION AND ORDER

Becker-Cleary noted that the "mental health realities of understanding the impact of childhood abuse is complicated" and the "process" of understanding that impact "can be slowed by other, on-going life struggles." Becker-Cleary Declar. at 2. While there is no doubt that complications surround this highly sensitive issue, and that delayed discovery can occur in these kinds of cases, Harwood's affidavit – and plaintiff's initial deposition testimony – establish plaintiff's actual knowledge of a causal connection between the alleged abuse and plaintiff's depression.

Finally, although the decision in *T.R. v. Boy Scouts of America* pertained to a claim brought against a municipality under 42 U.S.C. § 1983, the Oregon Supreme Court's general guidance in that decision supports defendants' summary judgment motion. The court instructed that applying "the discovery accrual rule is a factual issue for the jury unless the only conclusion a reasonable jury could reach is that the plaintiff knew or should have known the critical facts at a specified time and did not file suit within the requisite time thereafter." *T.R.*, 2008 WL 660648, at *7. As noted above, there is no reasonable refutation of Harwood's affidavit that establishes that plaintiff was advised in the mid-1990's that her alleged childhood incidents with her nuns contributed to her depression. The therapist explained explicitly to plaintiff that "all of the abusive incidents in her life (including the two incidents with the nuns) [were] a basis for her depression." Harwood Aff. at Para. 6.

The only conclusion a reasonable jury could reach in light of these facts is that plaintiff knew, or should have known, both the substance of her injury, and the role that the nuns and their alleged conduct played in that injury. *T.R.*, 2008 WL 660648, at *5 (citing *Shiele v. Hobart Corp.*, 587 P.2d 1010, 1014 (Or. 1978)).

Page 17    OPINION AND ORDER

**CONCLUSION**

The parties' arguments, briefing and supporting documentation have been considered carefully.  For the reasons provided herein, defendants' Motion to Strike [42] and defendants' Motion for Summary Judgment [23] are granted.  This court also concludes that defendants would be entitled to summary judgment even if defendants' Motion to Strike were denied.

This action is dismissed with prejudice.  Judgment will enter by separate Order.  All other motions are denied as moot.

IT IS SO ORDERED.

DATED this    28    day of March, 2008.

_____ /s/ Ancer L. Haggerty _____
Ancer L. Haggerty
United States District Judge